## ROBERTS *vs.* FLEMING.

[ACTION FOR BREACH OF WARRANTY OF SOUNDNESS OF SLAVE.]

1. *Motion to suppress deposition on account of defects in commissioner's return.* Where a commissioner certifies, that the witness was personally known to him, " and, after being duly sworn, deposed as set forth above in his answers to the annexed interrogatories; and that said answers, as above set forth, were reduced to writing, read over to, approved, and signed by said witness " in his presence,—the certificate shows a substantial compliance with the requisitions of the statute, (Code, §§ 2322–23,) and, in the absence of evidence to the contrary, is presumptive evidence that the commissioner did his duty in the execution of the commission.

2. *Opinion of physician as to value of slave.*—A physician who has some knowledge (though but limited) of the value of slaves, and who has examined and prescribed for the slave in controversy, may state that " her medical bill, for attention to her, would exceed the profit she could render her owner."

3. *Amendment of complaint.*—Where an amendment of the complaint is allowed against the objection of the defendant, and afterwards withdrawn, by leave of the court, because it made the complaint demurrable for a misjoinder of causes of action, there is nothing in this of which the defendant can take advantage on error.

4. *Measure of damages for breach of warranty of soundness of slave.*—In an action to recover damages for the breach of a warraney of soundness of a slave, whose unsoundness rendered her entirely valueless, the purchaser is entitled to recover the amount paid by him for reasonable and proper charges for care and attention to the slave, with interest from the time of payment.

Roberts v. Fleming.

5. *Sufficiency of complaint.*—In an action, under the Code, to recover damages
for the breach of a warranty of soundness of a slave, it is not necessary to
allege in the complaint, as special damages, expenditures made by plaintiff
for reasonable and proper medical care and attendance.

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. E. W. PETTUS.

THIS action was brought by Thos. G. Fleming, against
Joseph M. Roberts, to recover damages for the defendant's
breach of warranty of the soundness of a slave, named
Frances, bought by plaintiff from defendant in December,
1853. The bill of sale for the slave was in the usual
form, recited a consideration of $1000 as the price, and
contained a warranty both of soundness and title, in the
usual form.

Before entering on the trial, as appears from the bill of
exceptions, the defendant moved the court to suppress the
depositions of Dr. E. D. Connor and William G. Lancaster,
which had been taken on interrogatories and cross-interrog-
atories. The specified grounds of objection to each deposi-
tion were,—"1st, that the commissioner does not certify the
manner of taking said deposition; 2d, because said com-
missioner does not certify that said witness was first sworn
by him to speak the truth, the whole truth, and nothing
but the truth; and, 3d, because said commissioner does
not certify that he reduced the answers of the witness to
writing, or caused it to be done by the witness himself or
some other impartial person, as near as may be in the
language of the witness." The final certificate attached
by the commissioner to each deposition was the same, and
was in the following form: "By virtue of the commission
hereto annexed, I have this 7th October, 1854, at the
office of Clarke & Terrell, in the town of Dayton in said
county, caused the above named E. D. Connor," [or Wm.
G. Lancaster,] "the witness in said commission named,
who is personally known to me, to come before me; who,
after being duly sworn, deposed as set forth above in his
answers to the annexed interrogatories; that his said an-
swers, as above set forth, were reduced to writing, read over
to, approved, and signed by said witness in my presence.

Given under my hand and seal," &c. The court refused to suppress either deposition, and the defendant excepted.

Dr. Connor testified to his examination of the slave in controversy, about six weeks after plaintiff's purchase of her, and to the diseased condition in which he then found her; and, in a portion of his answer to the third interrogatory, used this language: " *Were I not a medical man, I would not have her,* as the medical bill for attention to her would exceed the profit she could render her owner." To each portion of this answer the defendant objected, and moved the court to exclude it from the jury. The court suppressed the italicized portion, but refused to suppress the remaining portion; and to this the defendant excepted.

After the argument to the jury had commenced, and during the closing argument for the plaintiff, " it was suggested by the court that, under the pleadings as they then stood, the plaintiff could not recover the purchase-money, as upon a rescission of the contract." The plaintiff then asked leave to amend his complaint, by inserting the common counts; to which the defendant objected, and also excepted to the overruling of his objection and the allowance of the amendment. After the amendment of the complaint by the addition of the common counts, the defendant demurred to it, " on the ground that the common counts could not be joined with a count on a contract on which a special breach had been assigned." The court then granted leave to the plaintiff to withdraw his amendment, and it was accordingly withdrawn; to which also the defendant excepted.

The court charged the jury as follows: " That if they believed defendant sold to plaintiff the slave mentioned in the bill of sale, and warranted her to be sound; and that said slave was unsound at the time of the sale, and, by reason of such unsoundness, was of no value; and that plaintiff, after the sale, but before the bringing of this suit, had expended a reasonable and proper amount of money for necessary care and attention to said slave,— then plaintiff was entitled to recover what would have been the value of said slave, if sound, at the time of the

sale, with interest thereon from the day of sale to the present time; and also the amount so expended for reasonable and proper charges for necessary care and attention to said slave, with interest thereon from the time of payment."

The defendant excepted to that portion of this charge "which allowed plaintiff to recover for money paid for care and attention to said slave," and requested the court to instruct the jury, " that if said slave was of no value at the time of the sale, the measure of damages would be, the value of the slave if she had been sound, with interest thereon up to the present time; and that the plaintiff, in such case, could not recover for any expenses incurred in care and attention to her;" which charge the court refused to give, and the defendant excepted.

The errors assigned embrace all the rulings of the court to which exceptions were reserved.

L. E. PARSONS, and JNO. WHITE, for appellant.
JAMES B. MARTIN, *contra*.

RICE, C. J.—The statements contained in the return of a commissioner appointed to take the deposition of a witness, in relation to the execution of the power conferred by the commission, are to be taken as true, until proof to the contrary is adduced.—Code, § 2323; King v. King, 28 Ala. R. 315, and authorities therein cited. In the absence of evidence to the contrary, the presumption is, that every act shown by the return to have been done by the commissioner, in the execution of the power conferred on him by the commission, was done *according to law*. In such case, the courts must apply the maxim, " *rite esse acta omnia præsumuntur*."—King v. King, *supra*.

The truth of the statements contained in the return of the commissioner who took the depositions of Connor and Lancaster, is not assailed by evidence; and, as those statements must therefore be regarded as true, we hold that they show that he substantially performed his duty, as directed by section 2322 of the Code, and that the mo-

tions to suppress those depositions were properly over-ruled.—See the cases cited *infra*.

We are aware that King v. King, *supra*, was a chancery case; and that there is a difference, in some respects, between depositions at law, and depositions in chancery. But, upon the question as to the credit due to the uncontradicted return of a commissioner, and the presumption arising therefrom, the rule laid down in that case is as applicable at law, as it is in chancery,—as is very clearly shown by Ulmer v. Austill, 9 Porter, 157, and other cases at law cited in King v. King; see, also, Sanford v. Spence, 4 Ala. R. 237; Dearman v. Chapman, 5 *ib.* 202; Luckie v. Caruthers, *ib.* 291.

2. The witness Connor was a physician, and had been engaged in the practice of medicine for thirteen years. About the 15th of February, 1854, (not more than two months after the sale,) he was called to see the negro girl, whose soundness is here in controversy. He made a thorough examination of her, and ascertained her condition and disease, which he describes. He says he has a knowledge, "but a limited knowledge of the value of negroes; and gives his "reasons for considering her valueless in her present condition." In the third direct interrogatory propounded to him and other witnesses for the plaintiff, the following questions were embraced: "What is your opinion of the curability of said disease, when taken at the stage at which you found this? Is it easy or difficult of being cured? Does said disease, at the stage at which you found this, have any effect upon the physical strength of its victim? If so, what, and to what extent? What effect did said disease have upon the ability of this negro to perform the labor common to similar negroes who are sound? Did said disease have any effect upon the value of said negro? If so, what? What would she have been worth 31st December, 1853, if she had been sound? What was her value in the condition she was in when you saw her?" The only part of the answers of the witness to these questions, to the introduction of which an exception was taken by the defendant, was the following: "as her medical bill for attention

to her, would exceed the profit she could render her owner." We think the sense of that part of the answer is, to some extent, illustrated by the context; and that it amounts to no more, in substance, than the opinion of the witness, that for the time to come, the value of the services of the negro girl would be less than the value of the medical attention she would require. As the witness had some knowledge of the value of negroes, and was a man of science—a physician—and had made a thorough examination of the negro girl, we think the opinion given by him was admissible, relating as it did to a material matter in the cause. The opinion is the necessary result of two facts—to-wit, the value of her services, and the value of the medical attention she would require; as to each of which the witness had shown himself competent to give his opinion, and more competent to judge than the jurors. True, the jury were to decide upon the value of the opinion, as well as upon the value of the evidence on which it was founded; but the court would be going too far to decide, that the jury could not derive any assistance from that opinion, in forming their conclusion upon the question whether the negro girl was permanently and incurably unsound and wholly worthless.—McCreary v. Turk, 29 Ala. R. 244; Ward v. Reynolds, at the present term; McKee v. Nelson, 4 Cowen, 355; Tullis v. Kidd, 12 Ala. R. 648; 1 Greenleaf on Ev. § 440.

3. Whether there was error in allowing the amendment of the complaint, we need not decide; because, if there was, it was cured by the withdrawal of the amendment, by leave of the court.—See Burch v. Taylor & Co., at the present term.

4. In Hogan v. Thorington, 8 Porter, 428, this court said: "A plaintiff, in general, is entitled to recover for *all losses resulting directly from a breach of the warranty;*" and held, that the purchaser of a slave warranted sound, who has proven entirely valueless, may recover, among other things, "all proper expenditures for medical aid," &c. Upon the authority of that case, we hold, that there was no error in that part of the charge excepted to, and no error in refusing the charge asked.—See Milton v.

Rowland, 11 Ala. Rep. 732; Marshal v. Wood, 16 Ala. R. 806; Cox v. Walker, cited in note to Clare v. Maynard, 6 Ad. & E. 519; Chesterman v. Lamb, 2 Ad. &. E. 129; Addison on Contracts, (edition of 1857,) 273, 1138, 1139, 1147–1149; Lewis v. Peake, 7 Taunton, 153; Pennell v. Woodburn, 7 C. & P. 118.

5. Whether, before the Code, it would have been necessary to have set forth in the complaint such expenditures as special damages, we need not inquire; for, however that may be, it is not under the Code necessary to set them forth in the complaint as special damages, as is evident from the forms laid down in the Code, and from sections 2227, 2228, and 2234 of the Code.

Judgment affirmed.

WALKER, J., not sitting.