## HOLLOWAY *vs.* COTTEN.

[ACTION FOR BREACH OF WARRANTY OF SOUNDNESS OF SLAVE.]

1. *Admissibility of slave's declarations.*—The declarations of a slave, complaining of sickness, and detailing her symptoms, are competent evidence on the principle of *res gestæ*, as well as from the necessity of the case, though made to a person who is not a physician; *secus,* as to her declarations, to the effect "that she had been that way, off and on, for the last year or two."

2. *Charge on question of damages, excluding portion of evidence from consideration of jury, erroneous.*—Plaintiff having introduced a physician as a witness, who testified that, in his opinion, the slave whose soundness was in controversy

Holloway v. Cotten.

was diseased at the time of the sale, and valueless; and there being no evidence of the actual value of the slave at that time, if she was not valueless,—it is error in the court to instruct the jury; "that if they were satisfied that the slave was unsound at the time of the sale, and if they believed the testimony of said physician as to her worthlessness, then they must find the full value of the slave for the plaintiff, although, on the whole proof, they might believe that the disease did not render her wholly valueless."

APPEAL from the Circuit Court of Chambers.

Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by Thomas S. Cotten, against Caleb Holloway, to recover damages for the breach of a warranty of soundness of a slave named Maria, sold by defendant to plaintiff in January, 1854. No pleas appear in the record. On the trial, as the bill of exceptions states, the plaintiff read in evidence his bill of sale for the slave, containing a warranty of soundness, and then introduced one Phillips as a witness, who testified as follows: "In March, 1854, some two months after the sale of said negro by defendant to plaintiff, witness was assisting plaintiff in making hill-side ditching, and Maria was engaged in working on the ditches, clearing out the same with a weeding-hoe. Witness saw her leaning on a stump; her eyes were rolling about in her head, and her breath was very short. When asked what was the matter, she said, 'that she was sick; that it would soon wear off; *and that she had been that way, off and on, for the last year or two.*' Witness was not a physician." The defendant objected to the admission of the last part of the slave's declarations, which is italicized, and reserved an exception to the overruling of his objection.

The plaintiff also introduced his own son as a witness, who was not a physician, and who testified, "that he carried Maria home from the defendant's house, on the day after the sale, in a two-horse wagon; that said slave, while they were going on, got out to walk, and, after walking about a half-mile, seemed to be out of breath, and complained of being sick, and of having shortness of breath." The defendant objected to this evidence, and reserved an exception to the overruling of his objec-

tion. The plaintiff also offered one Oliver as a witness, who testified, "that he was not a physician; that he was at plaintiff's house, one Sunday evening in March, 1854, and saw Maria in bed; that she seemed to be much distressed, and said, on his inquiring of her what was the matter, 'that she was sick at the stomach, and had shortness of breath.' The defendant objected to this evidence also, and excepted to the overruling of his objection.

"The plaintiff then introduced the evidence of physicians, tending to prove that said slave was diseased at the date of the bill of sale—that her womb was greatly enlarged, and had a large tumor on it; that two of them made a *post mortem* examination of her, took out the womb, &c.; and one of them testified, that said slave, if she had been sound, would have been worth $400, but, in her unsound condition, was valueless in his opinion. He further proved, that about the middle of March, 1854, said slave was badly burned one Sunday night, by her clothes catching fire; that her mouth, neck, and breast were badly burned, also the lower part of the abdomen, and the entire surface, from the hip down to the knee, on the right side; that she lived some ten or fifteen days afterwards, and died from the effects of said burning.

"The defendant then introduced evidence conducing to show that said slave was sound and healthy at the date of the bill of sale; and introduced physicians who testified, that sometimes women, of the age of said slave, (which was proved to be between fifty and fifty-five,) had enlargement of the womb, and sometimes tumors on the womb, without much impairing their health; that after women pass a certain age, called 'change of life,' (which generally takes place between forty and fifty,) it is usual for the womb to become enlarged; and that, in some instances, these enlargements affect their health but little, if at all. One of said physicians gave it as his opinion, that if the womb of said slave was only enlarged, it would not render her entirely valueless; that it might impair her value but slightly, &c.

"This was, in substance, the evidence in the case. No evidence was offered by either party, as to what was the

value of said slave, provided she was not so diseased as to render her wholly valueless; or as to the difference between her value if sound, and her value if only slightly diseased.

"The court charged the jury, among other things, 'that they might consider the declarations of the slave Maria, along with the other evidence in the case, to ascertain whether she was unsound at the date of the sale; that they had heard under what circumstances these declarations were made, and might give them such weight as they thought proper;' to which charge the defendant excepted.

"After the court had concluded its charge to the jury, the plaintiff's counsel suggested, that the court had not instructed the jury in one phase of the case—viz., what the jury should do, if they found that the slave was diseased at the time of the sale, and not so diseased as to render her valueless. The court replied, that no proof had been made on that point; and then instructed the jury, (neither party offering any further proof,) 'that as the plaintiff had introduced the evidence of a physician, who gave it as his opinion that the slave was diseased at the time of the sale, and that said disease rendered her valueless; and there being no evidence as to what her value was, if the disease did not render her wholly valueless,—if they were satisfied that said slave was unsound at the time of the sale, and believed the evidence of said physician as to her worthlessness, then they must, under the proof, find the full value of said slave for the plaintiff, although, on the whole evidence, they might believe that the disease did not render her wholly valueless; and that, in ascertaining the value of said slave, they might take the price agreed on between the parties themselves as the value of said slave.' To this charge, also, the defendant excepted."

All the rulings of the court to which exceptions were reserved, as above stated, are now assigned as error.

Brock & Barnes, for the appellant.
Richards & Falkner, contra.

RICE, C. J.—Upon the authority of Eckles v. Bates, 26 Ala. 655, we hold, that the court below erred in admitting the declaration made to the witness Phillips, who was not skilled in the science of medicine, that "she had been that way, off and on, for the last year or two."

Upon the authority of the case above cited, and of Phillips v. Kelly, 29 Ala. 628, we hold, that there was no error in admitting the other declarations of the slave which were objected to by the defendant. See, also, the authorities cited in Phillips v. Kelly, *supra.*

The charge of the court, in relation to the declarations of the slave, is erroneous, in so far as it authorized the jury to consider the declaration of the slave, herein first above mentioned, in ascertaining whether she was unsound at the time of the sale. In other respects, and as to the other declarations, that charge is defensible.

The law required the jury to weigh the whole evidence; and no matter what any one of the witnesses may have testified, as to the unsoundness and worthlessness of the slave, yet, if "*on the whole proof*" the jury "believed the disease did not render her wholly valueless," the court below should not have exacted of them to find "the full value of the slave for the plaintiff."—Watson v. Anderson, 13 Ala. 202; Roberts v. Fleming, 31 Ala. 683.

In so far as the last charge of the court below conflicts with this statement of the law, it is certainly erroneous. We deem it unnecessary to say anything more as to that charge, or to reiterate the measure of damages applicable to any phase in which cases like this may be presented. In that respect, our former decisions are sufficient to guide the court below to a correct result.—See Roberts v. Fleming, 31 Ala. 683.

For the errors above noticed, the judgment of the court below is reversed, and the cause remanded.