## STEIN *vs.* THE STATE.

[INDICTMENT AGAINST LESSEE OF CITY WATER-WORKS.]

1. *When indictment lies for breach of duty imposed by contract, and its sufficiency.*—An indictment lies against the lessee of the city water-works of Mobile, for a breach of the public duty imposed on him by his contract with the corporate authorities, in failing to furnish the city with a supply of water; but, since his contract only binds him to supply water to the city from Three-mile creek, and contains no stipulation as to the quality of the water to be supplied, an indictment which simply charges, in effect, that the water supplied by him was not good and wholesome, shows no breach of duty resulting from the contract.

2. *When indictment lies for nuisance, and its sufficiency.*—Selling and furnishing unwholesome and poisonous water to an entire community, is a nuisance, for which an indictment will lie; but, if the indictment does not allege that the defendant, his agents or servants, poisoned the water, or imparted to it its unwholesome quality, it must aver his knowledge of its unwholesome or poisonous quality.

3. *Relevancy of evidence to prove nuisance.*—Under an indictment for a nuisance, in selling and furnishing unwholesome and poisonous water to an entire community, the prosecution may adduce evidence, showing the deleterious effects of the water on particular persons, members of the community, not named in the indictment.

4. *Admissibility of slave's declarations.*—The declarations of a slave, complaining of sickness, and detailing his symptoms, are competent evidence on the principle of *res gestæ*, as well as from the necessity of the case, though made to a person who is not a physician.

From the Circuit Court of Baldwin.
Tried before the Hon. C. W. RAPIER.

THIS case originated in Mobile county, and was removed to Baldwin county on the application of the defendant. The fifth count of the indictment, on which alone the trial

was had, was in these words: "The grand jury of said county further charge, that, before the finding of this indictment, an agreement was entered into, on the 26th December, 1840, between the mayor, aldermen, and common council of the city of Mobile, of the first part, and the said Albert Stein, of the second part; which agreement was in tenor as follows,"—setting out the agreement, hereinafter more particularly referred to, by which Stein leased the city water-works of Mobile; "which agreement was duly executed on the day the same bears date, by the said party of the first part and the said party of the second part, and was confirmed by an act of the legislature of the State of Alabama, approved January 7, 1841, in tenor as follows,"—setting out the act, entitled "An act for the promotion of the health and convenience of the city of Mobile, by the introduction of a supply of wholesome water into said city, to be used for domestic purposes and the extinguishment of fires," which may be found in the Session Acts of 1840–41, on pages 53, 54. "And the grand jury further find, that the said Stein, for certain valuable considerations expressed in said agreement, promised and agreed, among other things, to supply the said city of Mobile and the inhabitants thereof with good and wholesome water, which promise and agreement was confirmed by the said act of the legislature, approved January 7, 1841, hereinbefore set out. And the grand jury further find, that the said Stein, in pursuance of the said agreement and said confirmatory act, accepted the right and franchise therein conveyed and granted, and, under said agreement and act, has, for a number of years, to-wit, ever since the year 1843, collected and received water-rates or rents, from the inhabitants of said city, amounting to a large sum, to-wit, the sum of $100,000, and does yet collect and receive water-rates from the inhabitants of said city; and that the said Stein, by reason of said agreement and said confirmatory act, and of his acceptance thereof, as hereinbefore averred, became liable and bound, and still is liable and bound, to supply said city and its inhabitants with good and whole-

some water, as hereinbefore averred. And the grand jury further find, that there were and are, in said city of Mobile, a large number of inhabitants, to-wit, thirty thousand, and a large number of taverns, hotels, restaurants, and places of entertainment for the public, where all the citizens of said State have been and are now accustomed, and had and have a right, to stop, stay, and tarry; to-wit, five taverns, five hotels, five restaurants, and five places of entertainment for the public. And the grand jury further find, that the said Stein has heretofore wholly failed and neglected, and does still fail and neglect, to supply the said city and its inhabitants with good and wholesome water; but, on the contrary, that the said Stein unlawfully did, at divers times, from the year 1843 to the finding of this indictment, and does now, sell and dispose of, to Nelson Walkley and others, inhabitants of said city, and to all the citizens of said State stopping, staying, and tarrying at the said taverns, hotels, restaurants and places of entertainment for the public, unwholesome and poisonous water, and did and does receive pay for the same; to the great injury of the said Nelson Walkley and his family, and to the common nuisance of the said inhabitants of Mobile, and of all the citizens of the said State stopping, staying and tarrying at the said taverns, hotels, restaurants, and places of entertainment for the public; against the peace and dignity of the State of Alabama."

The contract above referred to, by which Stein leased the city water-works of Mobile from the corporate authorities, contained the following stipulations: The parties of the first part leased and granted to Stein, for twenty years, "the sole privilege of supplying the city of Mobile with water from Three-mile creek," together with all the rights, benefits and advantages, accruing to them under the several acts of the legislature and ordinances of the city relative to the city water-works; and covenanted and agreed with him, that he should have quiet possession during the period of his lease, with power to collect water-rates, at the prices named in the contract, "and power and authority to con-

duct the water from any part of Three-mile creek, so 'that' the same may be good and wholesome;" and that they' would pay him, at the expiration of the lease, the value of the works which he might erect, to be fixed by arbitration. Stein, on his part, covenanted to commence the erection of the necessary works within one month after the ratification of the contract by an act of the legislature; to introduce the water into the city, within two years from the date of the contract, "so that the said city and its inhabitants may, at all times, be supplied with such a quantity of water as may be produced, through the said pipes as far as they are laid;" to furnish a certain number of water-plugs for the use of the city free of charge; and to deliver up the works, at the expiration of his lease, at their value as fixed by the arbitrators. The act of the legislature, above referred to, confirmed and ratified this agreement, and granted to Stein all the rights, privileges and immunities, which had been previously granted to the corporate authorities of Mobile, and to the old Mobile Aqueduct Company.

The defendant demurred to the fifth count of the indictment, and assigned the following grounds of demurrer: " 1st, because no criminal knowledge of the character of the water is set out; 2d, because the character of the water, or that which makes it poisonous or unwholesome, is not set out; 3d, because the contract does not require Stein to furnish 'good and wholesome water,' as charged, but only water from the Three-mile creek, and it is not charged that better water could be furnished from said creek, or that there has been any default in this respect; 4th, because the names of the persons sold to, are not properly set out; and, 5th, because the matter charged is not an indictable offense." The court overruled the demurrer, and the defendant excepted.

It appeared on the trial, as the bill of exceptions shows, that leaden pipes were used by the defendant in the distribution of water through some of the streets of the city; and it was contended, on the part of the prosecution, that this rendered the water unwholesome and poisonous. "The

State proved by Walkley, who was a practicing physician and chemist, that several persons who drank water supplied to him by the defendant, through his hydrant, were affected with a disease, which had all the symptoms of 'lead cholic,' and which he considered ' lead cholic ;' and evidence was offered tending to show, that said disease was caused by drinking the water from said leaden pipes. Walkley gave the symptoms, diagnosis and treatment of lead cholic, and said, that paralysis of the hands and arms was one of the most certain symptoms; and he gave an analysis of the water, and much other testimony tending to show that said water was unwholesome and poisonous by reason of the lead. The State then offered one Bruce as a witness, who was not a physician, and who testified, that three of his children had been sick and paralyzed, when they drank water from his hydrant, in another part of the town ; that they recovered on ceasing to drink it, became again sick and paralyzed on again drinking it, and again recovered on ceasing to drink it. The defendant objected to this evidence—1st, because he was not indicted for selling poisonous water to Bruce, and his case was not mentioned in the indictment; and, 2d, because special and particular cases of injury, not alleged in the indictment, could not be proved in this case. The court overruled the objections, and admitted the evidence; to which the defendant excepted. The State also introduced one Thompson as a witness, and asked him, 'what he knew about the lead pipes.' He testified, that he formerly used water from the lead pipes ; that, while he did so, a negro on his lot was sick, and, in describing his sickness to him, complained of a pain and weakness in his arm; and that he (witness) was not a physician. The defendant objected to this evidence, also, on the same grounds as to the evidence of Bruce, and because the negro's statements to the witness were mere hearsay. The court overruled the objections, and admitted the evidence ; to which the defendant excepted."

JNO. T. TAYLOR, with whom was E. S. DARGAN, for

the defendant, made .the following (with other) points:

1. The indictment fails to show an indictable offense. If all the allegations in .it were true, the defendant would only be liable, in a civil .action, for a breach of contract. 4 Bla. Com. 4; 1 *ib.* 46; 3 Greenl. Ev. § 1; 1 Mass. 157; Code of Alabama, § 3065. Moreover, if an indictment would lie for a breach of the contract, this indictment fails to show a breach. The contract itself, which is set out in the indictment, simply binds the defendant to supply the city of Mobile with water from the Three-mile creek, and contains no stipulation as to the character or quality of the water. The indictment does not charge that he failed to bring water from Three-mile creek, or that he brought water from elsewhere than the Three-mile creek, or that he did not bring as good water as that creek affords, but simply that he brought "unwholesome water,"—an allegation which may consist with the entire fulfillment, on his part, of every obligation imposed on him by the contract. The averment of the indictment, that the contract bound him to furnish "good and wholesome water," is at variance with the contract itself, and amounts to nothing.

2. The indictment is framed strictly on the contract, and for a breach thereof; and the question cannot be raised under it, whether an indictment would lie against the defendant, independent of the contract, for the common-law offense of selling poisonous water. But the indictment is fatally defective, whether considered as framed for a breach of the contract, or for the common-law offense, because it does not contain such a statement of the charge as is required by the cardinal doctrines of the criminal law. The constitution itself requires, that the offense shall be described in the indictment fully, plainly, and formally: in such language as will enable the court to determine, on an inspection of the indictment, whether the charge amounts to a violation of the criminal law, and, at the same time, inform the defendant of the nature of the offense with which he is charged, and enable him to prepare for his defense; in such language, too, as will fully identify the

Stein v. The State.

accusation, and prevent the defendant from being tried for an offense different from that which was investigated by the grand jury.—3 Greenl. Ev. § 10; Archb. Cr. Pl. 42, 51; 29 Ala. 28; 32 Ala. 584; 33 Ala. 397; 24 Miss. 594. The defendant was convicted for introducing water into the city through leaden pipes; yet neither he nor the court could say, from an inspection of the indictment, that this was the charge which the grand jury had investigated and preferred against him. The indictment ought to have stated how, or by what means, the water was rendered unwholesome and poisonous.—2 Missouri, 226; 1 English, 519; 3 Murph. (N. C.) 224; 21 Maine, 9; 13 Metcalf, 365; 3 Iredell, 111; Breese, 4; 6 Grattan, 675; 31 Maine, 401; 3 Blackford, 193. In the analogous cases of indictments for selling unwholesome provisions, and for attempts to poison, such an allegation is indispensable to the validity of the indictment.—11 Ala. 57; 6 Ala. 664; 19 Ala. 28, and numerous cases there cited. It should have been averred, too, either that the defendant himself poisoned the water, or that he knowingly sold unwholesome and poisonous water; otherwise, he might be tried, convicted and punished, for the act of a third person, of which he was wholly ignorant and blameless.—3 Greenl. Ev. § 13; 1 Bishop's Criminal Law, §§ 80, 227; *Rex v. Wheatley*, 1 Leading Criminal Cases, 7.

3. The testimony of Bruce was improperly admitted. If the indictment is to be considered as preferred against the whole water-works for a nuisance, evidence of special cases of injury was inadmissible; and if it is to be considered as an indictment for individual cases of selling unwholesome water, the evidence must be confined to the persons named in the indictment.—3 Greenl Ev. § 22; 20 Ala. 83; 25 Ala. 40; 32 Ala. 584.

4. The testimony of Thompson ought to have been excluded for the same reasons, and because it was mere hearsay.

R. B. ARMISTEAD, with whom were R. H. SMITH, and M.

A. BALDWIN, Attorney-General, *contra.*—1. The fifth count of the indictment is framed on the idea, that the defendant is a public contractor, and has failed to perform a public duty imposed on him by the terms of his contract. That the indictment shows an indictable offense, see 8 Bligh, 691 ; 3 Barn. & Ad. 77 ; 5 Bing. 91.

2. That the indictment is good and sufficient, whether founded on the defendant's contract, or considered as an indictment for a public nuisance, without an averment of the *scienter*, see 3 Hawks, 378 ; Wharton's Precedents, 764 ; 28 Vermont, 583 ; 6 Car. & P. 292 ; 3 Indiana, 193 ; 4 *ib.* 515 ; 10 N. H. 297 ; 1 Serg. & R. 342 ; 6 Porter, 372 ; 5 Porter, 366 ; 3 Archb. Pr. 607 ; 1 Hawk. P. C. 692 ; 1 Russell on Crimes, 318 ; Wharton's Crim. Law, 2373 ; 11 Humph. 217 ; 9 Barb. S. C. 173.

3. The indictment being for a nuisance, the testimony of Bruce and Thompson was clearly admissible. That the complaints of the negro were admissible, as a part of the *res gestæ*, see 17 Ala. 629 ; 6 East, 188 ; 2 Car. & K. 354 1 Greenl. Ev. § 102, and cases cited.

A. J. WALKER, C. J.—When a party owes the public a duty, although resulting from a contract, he is indictable for a breach of that duty. The obligation to the public, imposed on the defendant by his contract, was to supply water to the city of Mobile from Three-mile creek. The contract itself stipulates nothing as to the quality of water that may be furnished, further than may be implied in the requisition, that it shall be brought from Three-mile creek. The indictment alleges the defendant's failure and neglect to supply " good and wholesome water" to the inhabitants of Mobile, and also the sale and supply by him, to those inhabitants and the persons visiting the city, of " unwholesome and poisonous water." The former branch of this allegation is indeterminate, and comports equally with the idea, that there was not a supply of any water at all, or that there was a supply of water which was positively bad. In either alternative, there would be a failure to supply

" good and wholesome water." The meaning, however, becomes certain, when reference is had to the latter branch of the allegation, which shows that there was a supply of water; and the consistency of the two is preserved, by considering the former as asserting that the water supplied was not good and wholesome. There is, then, no allegation of a failure to supply water. The *gravamen* is, that there was a supply of water, the quality of which was unwholesome and poisonous. The defendant may have supplied water from Three-mile creek, which was, in the language of the indictment, " unwholesome and poison-ous," because the water of the creek was unwholesome and poisonous; and he may, therefore, have perpetrated the grievance alleged in the indictment, in the exact fulfillment of his contract. The indictment, therefore, shows no violation of any duty imposed on the defendant by the terms of his contract; and we may dismiss from our consideration the arguments which refer his criminality to a breach of his contract.

[2.] The indictment charges, however, that the poison-ous water was supplied to all the citizens of Mobile, and to those who might visit the city. Such an act is sufficiently general and extensive in its effects to constitute a nuisance; and the poisoning of the water consumed by an entire community, and by all who might go that way, would certainly possess the quality of injuriousness to the community, requisite to constitute a nuisance.—1 Bishop's Criminal Law, 352; 2 *ib.* 848. If, then, the indictment shows that the defendant is criminally guilty of inflicting the public injury alleged, it is a good accusation of nuisance. The indictment does not charge that the defendant knowingly or intentionally supplied water of unwholesome or poisonous quality; nor that he poisoned the water, or imparted to it its unwholesome quality; nor that the same was done by his agents or servants. The defendant may, therefore, have done all that is alleged, and yet have been guilty of no known or intentional wrong. Can it be that, upon upon such facts, the defendant is criminally guilty ?

The theory of the law is, that a criminal intent is a necessary ingredient of every indictable offense. The maxim is, *Actio non facit reum, nisi mens sit rea.* It is not necessary, in all cases, either to aver or prove the guilty intent; and the influence of legal presumptions may, sometimes, be such, that the legal imputation of a guilty intent may be made in contravention of the fact; as for instance, the presumption that every one knows the law. Where the *gist* of the offense is neglect, or carelessness, it would, as a general rule, be a solecism to speak of a guilty knowledge, since the neglect itself usually evidences the guilty mind; and the principle has been carried, in some cases, to the extent of making one criminally responsible for not using proper precaution to prevent the injurious acts of his servant. On this principle rest the decisions, where the servant rendered bread unwholesome, by the improper use of the ingredients; where the superintendent of a gas company corrupted the water of the river Thames, by conveying into it deleterious gases and fluids; where the engineer of a railroad neglected to ring the bell, or blow the whistle, at the crossing of a street; where the owner of a river caused detriment to neighboring lands by neglecting to scour it; where a corporation neglected to repair sea walls, in violation of its charter; and where other neglects, of like character, have been committed.—*Vermont v. Central Railroad*, 28 Vermont, 583; *Rex v. Medley*, 6 Car. & P. 292; *Henry v. Mayor of Lime*, 5 Bing. 91; S. C., 5 B. & Ad. 77; S. C., 8 Bligh's New R. 690; 1 Bishop on Criminal Law, 230, 231; Wharton's Amer. Criminal Law, 10, 11. But this principle does not apply here, because the charge against the defendant is really an act committed, and not the omission or negligent performance of an act. Neglecting to supply good and wholesome water, and supplying unwholesome and poisonous water, cannot be tortured into a simple charge of neglect. As well might it be said, that he who administers poison, dissolved in water, is simply guilty of neglecting to administer pure water; or that he who sells poisoned bread, is simply guilty of neglecting to sell

wholesome bread. Such sophistry would convert every positive act into a neglect. The poisonous quality of the water certainly may have been the result of some negligence, or carelessness, in the choice or arrangement of the instruments employed in supplying it; but such is not the charge, and we cannot aid the indictment by an inference of it.

It is a received principle, also, that "where the statement of the act itself includes a knowledge of the illegality of the act, no averment of knowledge or bad intent is necessary."—Wharton's Amer. Crim. Law, 297; *Commonwealth v. Stout*, 7 B. Monroe, 247; *Commonwealth v. Elwell*, 2 Metcalf, 190. "The law presumes that every person intends to do that which he does."—1 Bishop on Criminal Law, § 248. Hence, whenever one does an act legally wrong in itself, the law presumes the intent to do that act; the act, of itself, evidences the illegal intent. The doing of an act in its nature illegal—illegal without any extrinsic qualification—of itself evidences the criminal intent. But such is not the character of the act charged here. The furnishing of poisoned water is not, of itself, a crime: the criminality of the act depends upon the question, whether it was furnished with a knowledge of the poisonous quality; knowledge is an ingredient of the offense, and must be averred.—Wharton's Am. Crim. Law, 297; *State v. Brown*, 2 Speers, 129. Accordingly, where one is indicted for selling an obscene book, or for carrying off a slave, or for an indecent exposure of the person, or for keeping and suffering to go at large a dog of ferocious and furious nature, or for bringing into a public place an animal or person infected with a communicable disease, or for selling unwholesome meat, or for selling a diseased cow, or for uttering a forged note, or for any offense of like character,—it is held, that an averment of knowledge is necessary.—1 Bennett & Heard's Leading Criminal Cases, 6, 551; Wharton's Am. Crim. Law, 2396; Wharton's Precedents of Indictments, 716, 688, 718, 759, 762, 763, 768; 3 Archbold's Crim. Pl. 609–44; 3 Chitty's Crim. Law, 643; *Duncan v. State*, 7 Hum. 159; *Brig William Gray*,

1 Paine, 16 ; *Commonwealth v. Stout*, 7 B. Monroe, 247 ; *Rex v. Watts*, 2 Esp. 675.

There are, also, other rules pertaining to the necessity of averring a *scienter*, which it is not necessary for us to consider ; such, for instance, as that every person is presumed to intend the natural and probable consequences of his acts.—1 Bishop on Criminal Law, 248. From the proposition, that the criminality of supplying poisonous water consists in the fact of its being done with knowledge of the poisonous quality, it is an unavoidable sequence, that knowledge is an ingredient of the offense, and its averment is indispensable to the sufficiency of the indictment.

[3–4.] There was no error in the admission of the testimony of witnesses Bruce and Thompson. Their testimony had an obvious relevancy to the question, whether the defendant furnished unwholesome water to the public in the city of Mobile. The declarations of the slave, as to the nature of his suffering, were admissible, upon the principle settled in numerous cases decided by this court.— *Holloway v. Cotton*, 33 Ala. 529 ; *Cunningham v. Kelly*, 36 Ala. 78.

We do not deem it necessary to notice any of the other questions presented in the case.

Judgment reversed, and cause remanded.