# Coon *v.* The State.

## *Murder.*

### (Decided June 30, 1914. 65 South. 911.)

1. *Witnesses; Contempt; Refusal to Testify.*—Where a witness has been duly subpoenaed in a case, he may be adjudged in contempt for a refusal to testify, and may be imprisoned until he consents to give evidence. (Section 4028, Code 1907.)

2. *Homicide; Evidence.*—Under the evidence in this case the question whether defendant believed or suspected that the person found in the room with defendant's sister, and whom defendant shot and killed as he ran from the room, was M., who, to defendant's knowledge had been accused of improper relations with his sister, and had been warned to stay away from her and keep off the premises, was properly submitted to the jury.

3. *Same.*—Where deceased was shot and killed by defendant as he was fleeing from the room of the sister of defendant at night, evidence that improper relations had existed between deceased and defendant's sister, or were the subject of suspicion, which resulted in the deceased being notified to keep away, and that such matters were known to the defendant at the time of the killing, was admissible to show defendant's animus to deceased, and as tending to show motive for the killing.

[Coon v. The State.]

4. *Same; Intent.*—It is not necessary that the evidence should show a particular intent or motive for the killing; it only being necessary that the jury be satisfied from the evidence that the criminal act was committed with one of the intents comprehended in the offense charged.

5. *Same; Trespasser; Justification.*—A mere trespass upon defendant's person or property will not justify the taking of the intruder's life, the killing being justified only when necessary to prevent the commission of a felony by the trespasser, and not then if the intruder is only attempting a secret trespass, unaccompanied by force.

6. *Same.*—Where deceased had the consent of the sister of defendant to enter her bedroom, and on discovering deceased there defendant shot into the room through a window, so wounding deceased that he died the day following, deceased not having been engaged in the commission of a felony at the time, the killing was not justifiable, but was murder in the second degree.

APPEAL from Dale Circuit Court.

Heard before Hon. MIKE SOLLIE.

Wayman Coon was convicted of murder in the second degree, and appeals.   Affirmed.

J. E. Z. RILEY, for appellant.   Motive must be proved as a fact and not as hearsay, and any question or evidence admitted by the court as to the relations of deceased and Cora Coon, was error.—*Fair v. State,* 58 Ala. 79.   Each of the charges refused to defendant should have been given.—*Oliver v. State,* 17 Ala. 587; *Carroll v. State,* 23 Ala. 28; *Knowles v. State,* 26 Ala. 31; *Simpson v. State,* 59 Ala. 1; *Bostick v. State,* 94 Ala. 45; *Crawford v. State,* 112 Ala. 31; *Osborn v. State,* 140 Ala. 84; 21 Cyc. 830.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State.

PELHAM, J.—The indictment on which the defendant was tried charges murder in the first degree.   On the trial a conviction was had of murder in the second degree.

The evidence set out in the bill of exceptions tends to show, without material conflict, that the defendant was living with his wife in the same house occupied by his father and mother, and their children, the defendant's brothers and sisters. One of these sisters was a grown girl, Cora by name, and the defendant and his wife occupied an adjoining room to this girl, but there was no means of communication by door or otherwise between the two rooms, and it seems that there was but one door opening out of the room. It was shown that the father was not at home on the occasion of the homicide. Between 10 and 11 o'clock on the night of the homicide, the defendant heard a noise at one of the windows of his sister Cora's room, and got up and went around to the side window of the room, where he had heard the noise, and called to Cora and asked her who was in the room with her, and she replied that she did not know that any one was in there. The defendant then called to the person, whom he could hear in the room moving around, to come out and let it be known who he was. Upon the intruder's failing to do this and remaining silent (meanwhile locking and holding the door leading from the room), the defendant called to Cora to come out of the room through the side window opening on the veranda. This she did, being helped out of the window by the defendant. The defendant then went around to the door of the room on the rear, or other side of the room from the window, against which the person in the room had placed himself, and demanded that the intruder open the door and make himself known. This he did not do, but remained silent. The other members of the family had been aroused by this time and came upon the scene, the mother, also, calling to the person in the room to tell who he was and to come out. After going to the door held by

the intruder the second time and demanded admittance (the intruder all the while holding the door and remaining silent), and failing to have his demand complied with, the defendant, who could "discern something white" and see the "bulk" of the person against the door through the window, informed him that if he did not open the door he (defendant) was going to shoot. This brought no response or action upon the part of the person in the room, whereupon the defendant went back to the window and shot into the room. The man ran out of the door and ran off, without being recognized, according to the defendant and other members of the family present, but there can be no serious question from the evidence that this man was one Bert Miley, the person whom the defendant is charged in the indictment with having killed. The deceased was a married man living in the neighborhood, and it was shown that his attentions to the girl Cora (all the parties were colored people) had been noticed and were the object of suspicion by her father some time before the killing, and that deceased had been warned to stay away from the girl and not come to her house. He had been, in fact, suspicioned of illicit sexual relations with the girl, and had made "apologies" to her father for his misconduct, promised "to do better," and stay away from her. These matters were all shown to have been known to the defendant before the night of the killing. The deceased died early the next morning, after the night of the shooting, from a wound inflicted by a pistol shot that entered near the center of the back and close to the spinal column. The testimony of the defendant and his relatives was that but one shot was fired by him into the room while the intruder was holding the door and preventing an entrance into the room. There was other evidence introduced by the state, however, tend-

ing to show that more than one shot was heard to have been fired at the time and place in question. The hat, coat, and shoes of the deceased were found on the ground under the window of the girl's room next morning after the shooting that night.

The conduct of the witness Cora Coon, when on the stand, and her refusal, or failure, to answer proper questions after the court was forced to waste much time in long waits and delays, fully justified the remarks of the court in admonishing her to answer questions, and in fining her for contempt for her refusal or failure to do so. The fine is shown to have been subsequently remitted. A witness may be adjudged in contempt of court for refusing to give testimony in a case in which he has been duly and regularly subpoenaed (*Ex parte Pearce,* 111 Ala. 99, 20 South. 343), and may be imprisoned until he consents to testify.—Code, § 4028.

Under the evidence in this case it was for the jury to say, from all the circumstances, whether or not the defendant believed, or suspected, that the person in the room with his sister was Bert Miley, the person he was charged with killing, and who, to the defendant's knowledge, had been accused of having improper relations with his sister and warned to stay away from the girl and keep off the premises. It was, then, relevant and competent evidence, and proper for the state to show that these relations existed between Miley and defendant's sister, or were the subject of suspicion that caused Miley to be notified to keep away, and that these matters were known to the defendant at the time, for the purpose of showing a feeling of enmity or animus, against deceased that would furnish a motive actuating the defendant in the commission of the act. The natural tendency of this evidence was to give charac-

ter and tend to explain the conduct of the defendant in shooting at the time and under the circumstances shown, as well as to show a motive, and was, for these reasons, properly admitted.—*Gafford v. State,* 122 Ala. 54, 63, 25 South. 10; *Pate v. State,* 94 Ala. 14, 10 South. 665; *Caddell v. State,* 136 Ala. 9, 34 South. 191; *Tipton v. State,* 140 Ala. 39, 37 South. 231. The relations existing between the accused and the person injured prior to and at the time of the injury are competent, in conjunction with other circumstances, to disclose a motive.—*Hudson v. State,* 61 Ala. 333; *Long v. State,* 86 Ala. 37, 5 South. 443.

It was not necessary to authorize a conviction by the jury that the evidence should show the particular intent, or motive, that actuated the defendant in the commission of the offense, so long as the jury was satisfied from the evidence that the criminal act was committed with one of the intents comprehended in the charge.— Code, § 6874. The law presumes that every person intends to do what he does, and that the natural, necessary, and probable consequences of his acts were intended.—*McElroy v. State,* 75 Ala. 9; *Stein v. State,* 37 Ala. 123.

It is fundamental, and has long been the declared rule in this state, that the law will not justify taking the life of an intruder because of a mere trespass committed by him on the person or property of another; it is only when necessary to prevent the commission of a felony by the trespasser that the law justifies such a killing (*Oliver v. State,* 17 Ala 587), and not then when a person is only attempting a secret felony unaccompanied by force (*Storey v. State,* 71 Ala. 329). The authorities concur that the deliberate killing of another to prevent a mere trespass, whether it could or could not be otherwise prevented, is murder.—*Williams v.*

*State,* 44 Ala. 41. Of course if the circumstances are such as to impress one who has the lawful right to protect the house and its inmates with the reasonable belief, well founded and honestly entertained, that the purpose of the intruder was felonious, and that there was imminent peril pending to himself or other members of the house of loss of life, or grievous bodily harm, which could only be averted by taking the life of the intruder, then the homicide would be legally justified.— *Crawford v. State,* 112 Ala. 1, 21 South. 214. But the law declares with certainty that the right to kill a trespasser depends upon an existing necessity to take his life to prevent the commission by him of a felony or great bodily harm, or a well-founded reasonable belief in the mind of the slayer of the existence of such a necessity at the time he commits the act. In other words, the trespass must be accompanied with danger of great bodily harm, or the commission of a felony, that is imminent at the time the slayer takes the life of the intruder, to create the necessity that will justify the act. —*Noles v. State,* 26 Ala. 31, 62 Am. Dec. 745. When the trespass has been committed and there is no actual necessity to kill in order to prevent the commission of a felony or great bodily harm, and there are no circumstances upon which a reasonable belief of the existence of such necessity could be founded, then the killing would not be justified, but on the contrary would be unlawful.—*Noles v. State, supra.*

In this case the facts without material conflict show that the trespass had been committed. The intruder was on the premises the defendant had the legal right to protect, but this person was not, at the time he was shot and fatally wounded by the defendant, engaged in the commission of a felony or seeking to do bodily harm to the defendant or any of the inmates of the house. The

girl who had occupied the room had left it and was on
the outside of the house with her brother, the defendant.
The evidence afforded but slight, if any, inference that
if the intruder's intention and purpose in entering the
room was to have unlawful sexual intercourse with the
girl Cora, it was against her will and without her con-
sent.  And if with her consent, it would afford a basis
for an inference that she had invited or incited the inva-
sion, or even that Miley went into the room pursuant
to prearrangement between the two.

Construing the refused charges requested by the de-
fendant in connection with the evidence, it will be read-
ily seen that they are not reconcilable with the conclu-
sions of law here announced, and there is no error in
their refusal of which the defendant has any right to
complain.  The given charges more than covered the
correct propositions contained in portions of the re-
fused charges, and were, in some instances, more favor-
able statements of the law applicable to the case than
the defendant was entitled to.

No reversible error is shown by the record, and the
judgment of conviction appealed from will be affirmed.

Affirmed.